IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ANDREW L. WIMLEY                                                                    PLAINTIFF

VS.                                          CIVIL NO. 04-4077

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                        DEFENDANT

## MEMORANDUM OPINION

Andrew Wimley (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his applications for a period of disability and disability insurance benefits ("DIB"), under Title II, and supplemental security income benefits ("SSI"), under Title XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were filed on September 31, 2001, alleging an amended onset date of July 30, 2001,[1] due to chronic pancreatitis, the residuals of heart bypass surgery, and Bells Palsy. (Tr. 83-85, 130, 407-408). An administrative hearing was held on February 21, 2003. (Tr. 33-58). Plaintiff was present and represented by counsel.

At the time of the administrative hearing on February 21, 2003, plaintiff was thirty-eight years old and possessed a high school education. (Tr. 37). The record reflects that he has relevant previous work experience as a moving company laborer/driver, fast food worker, construction worker, cook, and department manager. (Tr. 23, 38-40, 121-128).

---

[1] Plaintiff originally alleged December 31, 1998, as his date of onset. (Tr. 35). However, at the hearing, he amended this date to July 30, 2001, the date of his heart attack. (Tr. 35).

AO72A
(Rev. 8/82)

On September 25, 2003, the Administrative Law Judge (hereinafter "ALJ"), issued a written opinion finding that plaintiff's pancreatitis, status post coronary artery bypass surgery, and chronic sinusitis constituted severe impairments. (Tr. 24). However, he concluded that plaintiff did not have an impairment or a combination of impairments listed in, or medically equal to one listed in Appendix I, Subpart P, Regulations No. 4. After discrediting plaintiff's testimony, the ALJ determined that plaintiff maintained the residual functional capacity ("RFC"), to lift, carry, push, and pull ten pounds occasionally and frequently; sit for a total of six hours during an eight-hour workday, with two hours uninterrupted; stand and walk for four hours during an eight-hour workday, with one hour uninterrupted; frequently balance; and, occasionally stoop, crouch, kneel, and crawl. He also stated that plaintiff "must be able to alternately stand and sit," and could never climb. As such, the ALJ found that plaintiff could not return to his past relevant work ("PRW"). However, with the assistance of a vocational expert, he concluded that plaintiff could perform a significant number of jobs in the national economy. (Tr. 25).

The Appeals Council declined to review this decision on May 11, 2004. (Tr. 7-11). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 9, 10).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record

2

contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir.2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir.2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education,

3

and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir.1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's conclusion that plaintiff suffers from a non-severe mental impairment. "A majority of the Supreme Court has adopted what has been referred to as a 'de minimis standard' with regard to the severity standard." *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989); *Funderburg v. Bowen*, 666 F.Supp. 1291 (W.D. Ark. 1987). Accordingly, only those slight abnormalities that do not significantly limit any "basic work activity" can be considered non-severe. *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987).

In the present case, the evidence reveals that plaintiff's treating psychologist, Dr. Michael McAllister, diagnosed him with dysthymic disorder and a mood disorder. (Tr. 345). In addition, Dr. Sanjeev Singhal, a psychiatrist, diagnosed plaintiff with major depressive disorder, rule out depression secondary to his general medical condition, and a history of alcohol dependence in partial remission. (Tr. 337). Plaintiff complained of a fluctuating appetite without significant weight loss, poor sleep, lack of motivation, feeling lonely, lack of desire to do anything, and an inability to report to work. Dr. Singhal indicated that plaintiff became tearful at times, especially when discussing his physical problems. Accordingly, Dr. Singhal prescribed Paxil and Trazodone. (Tr. 337). Progress notes from both treating doctors indicate that he continued to have problems with depression and anxiety through March 2003. (Tr. 233, 334-335, 368-369, 376, 377, 385, 387).

On March 13, 2002, Dr. Dan Donahue, a consulting, non-examining, psychologist completed

4

a psychiatric review technique form. (Tr. 293-306). After reviewing plaintiff's medical records, he concluded that plaintiff was suffering from an affective disorder, namely a depressive syndrome. (Tr. 293, 296). As a result, he found that plaintiff experienced moderate limitations regarding his activities of daily living; social functioning; and, ability to maintain concentration, persistence, and pace. (Tr. 303). However, no episodes of decompensation were noted. (Tr. 303). Dr. Donahue then completed a mental RFC assessment, indicating that plaintiff had moderate limitations regarding his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday, and interact appropriately with the general public. (Tr. 325-326).

On March 10, 2003, Dr. McAllister, completed a psychiatric documentation form indicating that plaintiff suffered from an affective disorder, namely a depressive syndrome. (Tr. 359, 361). He then opined that plaintiff had moderate limitations regarding his ability to perform activities of daily living and maintain social functioning, often experienced deficiencies of concentration, and continually experienced episodes of deterioration. (Tr. 365). *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is generally entitled to substantial weight).

We find it significant to note that both the non-examining, consulting physician and plaintiff's own treating psychologist concluded that plaintiff's mental impairment resulted in moderate limitations in several vital areas of mental functioning. As such, we cannot say that substantial evidence supports the ALJ's conclusion that plaintiff suffered from a non-severe mental impairment. Accordingly, remand is necessary to allow the ALJ to reconsider the evidence concerning plaintiff's mental impairment. On remand, the ALJ should also request that Dr. Singhal complete a mental RFC and

5

psychiatric review technique form.

We also note that the record contains additional medical records presented to and considered by the Appeals Council. (Tr. 10-11). Because this evidence was not submitted until after the ALJ had rendered his decision, he did not have the opportunity to review it. "[I]f a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council must consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 215-216 (8th Cir. 1990). When, as here, "'the Appeals Council has considered [the] new and material evidence and declined review, we must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence.'" *Gartman v. Apfel*, 220 F.3d 918, 922 (8th Cir. 2000) (quoting *Kitts v. Apfel,* 204 F.3d 785, 786 (8th Cir. 2000)).

In the present case, plaintiff presented additional medical records to the Appeals Council, covering the period from March 2003, until October 2003.[2] On March 19, 2003, plaintiff was admitted to the hospital due to unstable angina, coronary artery disease, hypercholesterolemia, and tobacco abuse. (Tr. 417). Plaintiff reported chest pain, describing it as a pressure-like sensation in his mid-chest that radiated to his left shoulder and upper extremity, with some associated shortness of breath. He stated that the pain occurred at rest, as well as with exertion. Further, plaintiff indicated that he had been experiencing similar intermittent pains over the previous one and one-half to two years. The pain was relieved with sublingual Nitroglycerine and eventual Nitropaste. However, plaintiff continued to

---

[2]The undersigned notes that plaintiff submitted these additional medical records on October 14, 2003, and October 30, 2003, approximately one month after the ALJ rendered his final decision on September 25, 2003, and ten months after the administrative hearing was held on February 21, 2003. (Tr. 10).

6

report some mild nausea and a headache caused by the nitroglycerin. (Tr. 417). Although an EKG revealed sinus bradycardia at fifty-two and mild nonspecific ST and T wave changes, there was no evidence of ischemia or injury. (Tr. 418). As such, plaintiff was diagnosed with unstable angina and coronary artery disease. Because a chest x-ray revealed a heart size in the upper limits of normal, the doctor ordered a cardiac catheterization and percutaneous coronary intervention. (Tr. 418, 425). The echocardiogram revealed a left ventricular ejection fraction rate of fifty to fifty-five percent, with normal internal dimensions. (Tr. 427). His left atrial, right atrial, and right ventricular size, functions, and dimensions were structurally normal. Further, his aortic root and mitral and tricuspid valves were also normal. No prolapse, vegetation, pericardial effusion, or intraventricular thrombi were noted. (Tr. 427-428). However, there was some trace tricuspid regurgitation. (Tr. 427). An angiography revealed severe multivessel native coronary artery disease with patent saphenous vein graft to the obtuse marginal branch of the left circumflex and left internal mammary artery to the left anterior descending artery ("LAD"), occluded saphenous vein grafts to the right coronary artery and first diagonal branch of the LAD, preserved left ventricular systolic function, and trace mitral regurgitation. (Tr. 430). As there appeared to be no further revascularization indicated, the doctor suggested aggressive medical therapy and strict risk factor modification. Therefore, he opted to place plaintiff on Imdur and Lopressor. On March 22, 2003, plaintiff was released from the hospital. (Tr. 418).

On April 16, 2003, plaintiff complained of a knot in his right leg. (Tr. 466). He stated that he was having less chest pain than before, although he continued to report occasional chest pain and shortness of breath with exertion. His main complaint was the pain in his right leg. After a physical examination detected a hematoma, plaintiff was discharged home with directions to continue his current medications, take the nitroglycerin as needed, and return to the emergency room if his pain

7

necessitated three nitroglycerin tablets or more. (Tr. 467).

On April 22, 2003, plaintiff was reportedly doing fairly well at home, although he did complain of pain in his groin related to his recent cardiac catheterization. (Tr. 433). Plaintiff also complained of bilateral aching in his thighs and calves with walking. He indicated that the pain usually began after walking one-half block to one block. With rest, the pain reportedly resolved. However, he reported no lower extremity swelling, significant chest pain, or shortness of breath. Dr. Scott Black ordered an arterial doppler of the right groin and ankle-brachial index studies of the lower extremities. (Tr. 434). As plaintiff indicated that he had been previously unable to obtain an arterial doppler due to his financial situation, Dr. Black arranged for him to have these procedures performed at a different facility. After increasing plaintiff's Imdur dosage and giving him samples of Nexium to take in place of the Protonix, Dr. Black directed plaintiff to return to the clinic in three months. (Tr. 434).

On September 9, 2003, plaintiff presented at the hospital with substernal chest pain that radiated into his left arm. He indicated that the pain was not associated with or affected by activity, although it was relieved with sublingual Nitroglycerine. (Tr. 441). Plaintiff also reported experiencing nausea, vomiting, musculoskeletal cramps, fatigue, dry mouth, polyuria, and weight loss over the past two months. Although plaintiff failed the exercise treadmill stress test, cardiolite images showed no focal ischemia. Nevertheless, a cardiolite myocardial perfusion scan revealed scarring from his previous myocardial infarction, and depressed left ventricular systolic function with an ejection fraction rate of thirty-seven percent. (Tr. 454-455). An echocardiogram also revealed mildly depressed left ventricular systolic function with an estimated ejection fraction rate between thirty-five and forty percent, mild thickening of the mitral and tricuspid valves, mild calcification of the mitral leaflets, thickened aortic root leaflets, mitral regurgitation, tricuspid regurgitation, and systemic atrial

hypertension. (Tr. 457). At the time of admission, his glucose was 380, and his cardiac enzymes and EKG were both normal. Therefore, plaintiff was diagnosed with recurrent chest pain, newly diagnosed adult onset diabetes, severe native coronary artery disease, hypercholesterolemia, and tobacco abuse. Plaintiff's hospital stay was unremarkable, except for complaints of left-sided maxillary pain secondary to a possible left upper incisor abscess, for which he was prescribed Clindamycin. Once stable, plaintiff was discharged home on September 11, 2003. (Tr. 441). Dr. Joseph Radawi stated that plaintiff could perform activities as tolerated, placed him on an 1800 calorie diabetic diet, and prescribed Prevachol, Protonix, and Toprol XL. He then directed plaintiff to follow-up with Dr. Black, and to go to Dr. Black's office for free samples of his medications. (Tr. 442).

On September 13, 2003, plaintiff presented at the emergency room stating that he could not get his blood sugar level down to normal. (Tr. 437). He stated that his blood sugar was 448 at his home. At the hospital, his glucose level was noted to be 353. Plaintiff was given four units of insulin, and later released in stable condition. (Tr. 437).

On October 8, 2003, plaintiff had a follow-up concerning his diabetes, hypertension, coronary artery disease, and increased lipid level. (Tr. 464). His home glucose levels reportedly ranged from the 170's to 400. As such, his insulin dosage was adjusted, and he was placed on a sliding scale regimen. (Tr. 465). In addition, plaintiff was scheduled for diabetes education. (Tr. 464).

After reviewing this evidence, it is clear that the information contained in these medical records is both material and relative to plaintiff's condition as it existed at the time of the ALJ's decision, and that the evidence was considered by the Appeals Council. (Tr. 10). Therefore, based upon our consideration of the evidence, we are of the opinion that there is a reasonable likelihood that this additional evidence would have changed the ALJ's opinion. Accordingly, on remand, the ALJ should

9

consider this evidence in conjunction with the other medical evidence contained in the file, before making a final decision.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ENTERED this 22nd day of August 2005.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)